**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS**<br>**ANTITRUST LITIGATION** | 12-md-02311<br><br>Honorable Sean F. Cox |
| In Re: Ceramic Substrates | Case No. 2:16-cv-03805- SFC-RSW |

**THIS RELATES TO:**
State Attorneys General

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br>**ex rel. Xavier Becerra,**<br>**Attorney General of the State of California** | Case No. 2:20-cv-11912<br><br>**Complaint for Damages, Civil Penalties,**<br>**and Injunctive Relief** |
|                 **Plaintiffs,**<br>   **v.** | **Demand for Jury Trial** |
| **Corning Incorporated**<br>**Corning International Kabushiki**<br>**Kaisha** | |
|          **Defendants.** | |

The State of California, through Xavier Becerra, the Attorney General, in his official

capacity as the chief law enforcement officer of the State of California files this complaint

against Corning Incorporated and Corning International Kabushiki Kaisha ("CIKK") and

(collectively, Defendants or "Corning"), and alleges:

**NATURE OF ACTION**

1. Defendants and their co-conspirators conspired to suppress and eliminate competition by

    agreeing to rig bids for, and to fix, stabilize, and maintain the price of Ceramic Substrates

1

("Ceramic Substrates"). These price-fixed parts were installed in vehicles purchased by Plaintiffs.

2. For the duration of the conspiracy, from at least as early as July 1999 and continuing at least until July 2011, Defendants' actions resulted in fixing, stabilizing, and maintaining prices for Ceramic Substrates. Due to Defendants' unlawful conduct, the State of California and its state agencies were deprived of open and fair competition when purchasing such parts and paid higher-than-competitive prices for both the parts themselves and for vehicles in which they were installed.

3. Competition authorities in the United States, the European Union, and Japan have been investigating a number of conspiracies involving automotive parts since at least February 2010. On May 16, 2016, the United States Department of Justice ("DOJ") announced that CIKK agreed to plead guilty and to pay a $66.5 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of Ceramic Substrates sold to vehicle manufacturers in the United States and elsewhere. Under the terms of the plea agreement, the DOJ agreed not to prosecute Corning.

4. Defendants and their co-conspirators affected millions of dollars of commerce. The State of California, California businesses, and consumers suffered antitrust injury to their business or property due to Defendants' conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and artificially inflate prices for Ceramic Substrates during the duration of the conspiracy.

**JURISDICTION AND VENUE**

2

5.  Plaintiffs bring this action to secure damages, permanent injunctive relief, civil penalties, and reasonable attorneys' fees pursuant to Section 4 (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. §26) for violations of Section 1 of the Sherman Act (15 U.S.C. §1), as well as sections 16720 and 17200 *et seq.* of the California Business and Professions Code.

6.  This Court has original jurisdiction over the subject matter of all causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are so related to the federal question claims that they form part of the same case or controversy that would ordinarily be tried in one judicial proceeding.

7.  Venue is proper in the United States District Court, Eastern District of Michigan, pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. § 1391. Defendants transact business in the United States, including in this district, committed an illegal act, or are found in this district, and a substantial part of the events giving rise to the claims arose in this district.

## PARTIES

### Plaintiffs

8.  The State of California is authorized to file Count I under 15 U.S.C. §§ 15 and 26 to enjoin Defendants from the violations alleged herein.

9.  The Attorney General brings this action on behalf of the Plaintiffs the State of California, including California state agencies, for damages, civil penalties, injunctive relief and equitable relief.

10. The Attorney General of California is the chief legal officer of the State of California and the enforcement authority of sections 16720 and 17200 *et seq.* of the California Business and Professions Code, and is authorized to file Counts II, III, and IV. As California's chief law enforcement officer, the Attorney General enforces California's antitrust laws, including the Cartwright Act. Cal. Bus. & Prof. Code §§ 16700 - 16770. The Attorney General is specifically authorized to obtain injunctive and other equitable relief, restitution, and civil penalties to redress unfair, unlawful, and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

## Defendants

11. Defendant Corning Incorporated is a New York corporation with its principal place of business in Corning, New York. Defendant CIKK is a Japanese corporation with its principal place of business in Tokyo, Japan. It is a subsidiary of its parent, Corning Incorporated.

## Co-Conspirators and Agents

12. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

13. Plaintiffs reserve the right to name some or all of the persons or entities who acted as co-conspirators with Defendants in the alleged offenses as Defendants.

14. Any reference in this Complaint to any act, deed, or transaction by a corporation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

15. Defendants also are liable for acts of companies they acquired through mergers or acquisitions which are done in furtherance of the alleged conspiracy.

16. Defendants named herein acted as the agent or joint venture of or for the other co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

## FACTUAL ALLEGATIONS

17. Defendants engaged in the business of manufacturing and selling Ceramic Substrates directly or indirectly to vehicle manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. A "Ceramic Substrate" is an uncoated ceramic monolith with a fine honeycomb structure that, after coating by third parties with a mix of metal and other chemicals, in incorporated into an automotive catalytic converter. A catalytic converter is an emissions control device that converts certain pollutants in an exhaust gas stream into less harmful gases through a catalytic chemical reaction. A typical internal combustion engine in a vehicle has one or two catalytic converters. A Ceramic Substrate is sometimes also referred to as a "monolith."

18. When purchasing Ceramic Substrates, vehicle manufacturers issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts. Automotive parts suppliers submit quotations, or bids, to the vehicle manufacturers in response to RFQs, and the manufacturers usually award the business to

the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production, and Ceramic Substrates are developed over a year in advance of a new model vehicle entering the market.

19. During the period of conspiracy, Defendants manufactured Ceramic Substrates (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

### Structural Characteristics of the Automotive Parts Market

20. The structural characteristics of the automotive parts market are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. These characteristics include high barriers to entry and inelastic demand.

21. There are substantial barriers to entry in the Ceramic Substrates market. It would require substantial initial costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long standing relationships with customers. These costs are considered as high barriers to entry, and preclude or make entry into the market of Ceramic Substrates more difficult.

22. Due to high barriers to entry, incumbent firms have incentive to collude and keep supra-competitive prices. High barriers to entry also facilitate the maintenance of collusion since incumbents do not face the risk of new entrants engaging in price competition.

23. "Elasticity" is a term used in economics to describe the sensitivity of supply and demand to changes in the price. Demand for a certain product is "inelastic" when an increase in price of the product creates only a small change in the quantity demanded of that product. Consumers of the product whose demand is inelastic would continue to buy it despite a price increase.

24. When customers are not sensitive to a price increase, a cartel can increase price and maintain relatively level sales volume. Thus, it could continue to keep supra-competitive prices with relatively stable demand and increase profit.

### Government Investigations

25. The United States Department of Justice ("Department of Justice"), as well as authorities in the European Union and Japan, started global, industry-wide investigations into possible violations of the antitrust laws in the auto parts industry in 2010. The complete scope of the investigations is unknown.

26. The Department of Justice publicly announced aspects of the investigation when FBI agents raided the offices and factories of suspected companies. Since the raids, the investigation has continued to this date. So far 46 companies have been convicted and collective fines total more than $2.9 billion.

27. On May 16, 2016, the DOJ announced that CIKK agreed to plead guilty and to pay a $66.5 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of Ceramic Substrates sold to vehicles manufacturers in the United States and elsewhere

28. In the plea agreement, CIKK admitted that it, through a certain senior Japan executive, participated in a conspiracy with another entity engaged in the manufacture and sale of Ceramic Substrates. The primary purpose of this conspiracy was to eliminate competition, to rig bids for, and to fix, stabilize, and maintain the prices of such parts sold to vehicle manufacturers in the United States and elsewhere.

29. In furtherance of the conspiracy, CIKK, through its senior Japan executive, engaged in discussions and attended meetings with a co-conspirator involved in the manufacture and sale of Ceramic Substrates. During such meetings, CIKK and a co-conspirator agreed to (a) allocate the supply of such parts sold to vehicle manufacturers; (b) rig bids quoted to vehicle manufacturers for them; and (c) fix, stabilize, and maintain their prices.

### Trade and Commerce

30. During the period of the conspiracy, Defendants and their co-conspirators sold Ceramic Substrates to vehicle manufacturers located in various states in the United States in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, equipment and supplies necessary to the production and distribution of Ceramic Substrates sold by Defendants and their co-conspirators, as well as payments for such parts sold by Defendants and their co-conspirators, traveled in interstate and foreign trade and commerce.

31. Plaintiffs purchased a substantial volume of vehicles. A substantial volume of vehicles containing Ceramic Substrates manufactured by Defendants and their co-conspirators were sold to California state agencies, California businesses, and California consumers.

32. The anticompetitive act was intentionally directed at the United States market for Ceramic Substrates because Defendants and their co-conspirators intentionally sold them

to vehicle manufacturers that in turn sell vehicles in the United States and in the State of California. The business activities of Defendants and their co-conspirators in connection with the production and sale of Ceramic Substrates that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### The Pass-Through of Overcharges to Consumers

33. Defendants' and their co-conspirators' conspiracy to fix, stabilize, and maintain the prices of Ceramic Substrates at artificial levels resulted in harm to Plaintiffs because it resulted in Plaintiffs paying higher prices for both the parts themselves and the vehicles installed with them than they would have paid in the absence of Defendants' and their co-conspirators' conspiracy. The entire overcharge at issue was passed onto California consumers.

### Fraudulent Concealment

34. Throughout the period of conspiracy, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs.

35. Even though Plaintiffs exercised reasonable diligence, they could not discover the violations of law alleged in this Complaint until long after the commencement of their conspiracy.

36. The DOJ began an investigation into conspiracies in the auto part industry as early as 2010, but the complete scope of products and companies involved in the conspiracies has not been disclosed to the public yet.

37. CIKK's participation in the conspiracy and its conduct in furtherance of the goals of the conspiracy were not publicly known until the Department of Justice announced the plea agreement with Defendants on or about May 16, 2016.

38. Plaintiffs could not have discovered the violations earlier than that time because Defendants and co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance of the goals of the conspiracy, and fraudulently concealed their activities through various means and methods designed to avoid detection.

39. Defendants and their co-conspirators successfully and affirmatively concealed the nature of their conspiracy and unlawful conduct in furtherance of the conspiracy in at least the following respects:

    a.  By agreeing among themselves to meet at locations where the conspiracy was less likely to be detected;

    b.  By agreeing among themselves to engage in an illegal bid-rigging and price-fixing conspiracy, which is by its nature self-concealing; and

    c.  By agreeing among themselves to keep the existence of the conspiracy secret, including the usage of secret code names.

40. Plaintiffs had no knowledge of the alleged conspiracy or of any facts or information that might have led to the discovery of the conspiracy in the exercise of reasonable diligence, at least prior to May 16, 2018, when the DOJ announced the plea agreement with Defendants.

41. Defendants' and their co-conspirators' effective, affirmative, and fraudulent concealment effectively prevented timely detection by Plaintiffs, and was a substantial factor in causing Plaintiffs' harm.

### Injury

42. But for Defendants' and their co-conspirators' anticompetitive acts, Plaintiffs would have been able to purchase vehicles that incorporated price-fixed parts at lower prices or at prices that were determined by free and open competition.

43. Defendants' and their co-conspirators' unlawful activities took place within interstate and foreign trade and commerce, and had direct, substantial, and reasonably foreseeable effect on United States and California commerce.

44. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Plaintiffs were not able to purchase Ceramic Substrates and vehicles installed with those price-fixed parts at prices that were determined by free and open competition. Consequently, Plaintiffs have been injured because they paid more than they would have paid in a free and open competitive market. There is a domestic injury that is concrete, quantifiable, and directly traceable back to the Defendants' and their co-conspirators' anticompetitive conduct.

45. As Plaintiffs paid more than what they would have paid absent the conspiracy, Defendants' and their co-conspirators' conduct has resulted in deadweight loss to the economy of the State of California, including reduced output, higher prices, and reduction in consumer welfare.

46. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Defendants' and their co-conspirators benefitted unjustly from the supra-competitive and

artificially inflated prices. The unjust financial profits on the sale of price-fixed Ceramic

Substrates resulted from their illegal and anticompetitive conduct.

## VIOLATIONS ALLEGED

### Count I

### (Violation of Section 1 of the Sherman Act)

47. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every

    allegation set forth in the preceding paragraphs of this Complaint with the same meaning,

    force, and effect.

48. Defendants and their co-conspirators engaged in a conspiracy which unreasonably

    restrained the trade or commerce among the several States and with foreign nations; thus,

    their conduct violates Section 1 of the Sherman Act (15 U.S.C. §1). The State of

    California is entitled to relief resulting from the Defendants' conduct.

49. Defendants and their co-conspirators entered into a continuing agreement, understanding,

    and conspiracy to raise, fix, maintain, and stabilize the prices charged for Ceramic

    Substrates during the period of conspiracy.

50. Their unlawful conduct in furtherance of the conspiracy was intentionally directed at the

    United States market for Ceramic Substrates and had a substantial and foreseeable effect

    on interstate commerce by raising and fixing prices of the parts in the United States.

51. The State of California has been injured by being forced to pay artificially inflated prices

    for Ceramic Substrates and vehicles installed with Ceramic Substrates than they would

    have paid in the absence of the conspiracy.

52. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed and will continue to be damaged by being forced to pay supra-competitive prices that they would not have paid in the absence of the Defendants' conduct.

53. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

54. Unless permanently restrained and enjoined, Defendants will continue to unreasonably restrain fair and open competition for Ceramic Substrates. Plaintiffs are entitled to an injunction against Defendants to prevent and restrain the violations alleged herein.

### Count II

### (Violation of the Cartwright Act, Business & Professions Code Section 16720)

55. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

56. Beginning in at least as early as July 1999 and continuing at least until July 2011, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust for the purpose of unreasonably restraining trade in violation of section 16720 of the California Business and Professional Code.

57. Defendants and their co-conspirators violated California Business and Professional Code section 16720 by forming a continuing unlawful trust and arranging a concerted action among Defendants and their co-conspirators in order to fix, raise, maintain and stabilize the prices of Ceramic Substrates.

58. In furtherance of the goals of the conspiracy, Defendants and their co-conspirators conspired to:

   a. fix, raise, maintain, and stabilize the price of Ceramic Substrates;

   b. submit rigged bids for the award of certain Ceramic Substrates contracts for vehicle manufacturers; and

   c. allocate markets for Ceramic Substrates amongst themselves.

59. The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

   a. price competition in the sale of Ceramic Substrates has been restrained, suppressed, and/or eliminated in the State of California;

   b. prices for Ceramic Substrates sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high and non-competitive levels in the State of California; and

   c. Plaintiffs who purchased vehicles installed with price-fixed Ceramic Substrates have been deprived of the benefit of free and open competition.

60. As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs were injured in their business and property because they paid more for Ceramic Substrates and vehicles installed with price-fixed parts than they would have paid in the absence of Defendants' and their co-conspirators' unlawful conduct. As a result of Defendants' and their co-conspirators' violation of section 16720 of the California Business and Professions Code, Plaintiffs bring this claim pursuant to section 16750(c) and seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to section 16750(a) of the California Business and Professions Code. The California Attorney General is entitled to fines and civil penalties to the maximum extent

permitted by law under section 16755 of the California Business and Professions Code. The California Attorney General may also obtain injunctive relief under section 16745.5 of the California Business and Professions Code.

## Count III

### (Violation of the Unfair Competition Law, Business and Professions Code Section 17200)

61. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

62. Beginning in at least as early as July 1999 and continuing at least until July 2011, Defendants and their co-conspirators committed acts of unfair competition, as defined by sections 17200, *et seq.*, of the California Business and Professions Code.

63. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants and their co-conspirators, as alleged herein, constituted a common continuing conduct of unfair competition including unfair, unlawful and fraudulent business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code, including, but not limited to, the following:

    a. The violations of section 16720, *et seq.*, of the California Business and Professions Code, set forth above, constitute unlawful acts within the meaning of section 17200 of the California Business and Professions Code;

    b. Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of section 16720, *et seq.*, of the

California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

c.   Defendants' acts and practices are unfair to consumers of Ceramic Substrates and of vehicles installed with price-fixed parts in the State of California, within the meaning of section 17200 of the California Business and Professions Code;

d.   Defendants' acts and practices are fraudulent or deceptive within the meaning of section 17200 of the California Business and Professions Code; and

e.   Defendants' actions to solicit others to join the conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and/or artificially inflate prices for Ceramic Substrates, whether successful or not, are unfair business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code.

64. The unlawful and unfair business practices of Defendants and their co-conspirators caused Plaintiffs to pay supra-competitive and artificially inflated prices for Ceramic Substrates and vehicles in which they were installed. Plaintiffs were injured in their business and property because they paid more than they would have paid in the absence of Defendants' and their co-conspirators' unlawful conduct.

65. The California Attorney General is entitled to recover civil penalties for the violations alleged in this Complaint not to exceed $2,500 for each violation of section 17206 of the California Business and Professions Code.

## Count IV

## Unjust Enrichment

66. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

67. Plaintiffs were deprived of economic benefit because Defendants' and their co-conspirators' anticompetitive conduct created supra-competitive and artificially inflated prices for Ceramic Substrates.

68. Defendants and their co-conspirators enjoyed unjust financial profits which were derived from unlawful overcharges and monopoly profits. Their financial profits are economically traceable to overpayments for Ceramic Substrates by Plaintiffs.

69. The supra-competitive and artificially inflated price for Ceramic Substrates, and unlawful monopoly profits enjoyed by Defendants and their co-conspirators are a direct and proximate result of Defendants' and their co-conspirators' unlawful practices.

70. It would lead to injustice if Defendants and their co-conspirators could retain any of the unlawful financial profits that are a direct and proximate result of their engagement in unlawful, unfair, and fraudulent conduct.

71. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' and their co-conspirators' unfair competition. Plaintiffs are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants' and their co-conspirators' engagement in unlawful, unfair, and fraudulent conduct.

72. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their unlawful and anticompetitive conduct. Under sections 17203

and 17204 of the California Business and Professions Code, Plaintiffs are accordingly entitled to an injunction against Defendants in order to restrain the violations alleged herein and to equitable relief which includes restitution of any money or property which may have been acquired by means of Defendants' and their co-conspirators' unfair and anticompetitive conduct. Plaintiffs are also entitled to civil penalties to the maximum extent permitted by law pursuant to section 17206, *et seq.*, of the California Business and Professions Code.

### Prayer for Relief

73. Accordingly, Plaintiffs request that this Court:

   a. Adjudge and decree that Defendants violated the Sherman Act (15 U.S.C. §1);

   b. Adjudge and decree that Defendants' contract, conspiracy, or combination constitutes an illegal and unreasonable restraint of trade in violation of the Cartwright Act, section 16720, *et seq.*, of the California Business and Professions Code;

   c. Adjudge and decree that Defendants' contract, conspiracy, or combination violates the Unfair Competition Law, section 17200, *et seq.*, of the California Business and Professions Code;

   d. Award to Plaintiffs to the maximum amount permitted under the relevant federal antitrust law;

   e. Award to Plaintiffs damages, trebled, in an amount according to proof pursuant to section 16750, *et seq.*, of the California Business and Professions Code;

   f. Award to Plaintiffs the deadweight loss (i.e. the general damage to the economy of the State of California) resulting from Defendants' illegal activities;

18

g.  Award to Plaintiffs restitution, including disgorgement of profits obtained by
Defendants as a result of their acts of unjust enrichment, or any acts in violation
of federal and state antitrust or consumer protection statutes and laws, including
section 17200, *et seq.*, of the California Business and Professions Code;

h.  Award to Plaintiffs pre- and post-judgment interest, and that the interest be
awarded at the highest legal rate from and after the date of service of the initial
complaint in this action;

i.  Award Plaintiffs the maximum civil penalties under section 17206 of the
California Business and Professions Code for each violation of California
Business and Professions Code section 17200, *et seq.*, Defendants' as set forth in
this Complaint;

j.  Award Plaintiffs the maximum fines and civil penalties under section 16755 of
the California Business and Professions Code for each violation of California
Business and Professions Code section 16720, *et seq.*, as set forth in this
Complaint;

k.  Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates,
assignees, subsidiaries, successors, and transferees, and their officers, directors,
partners, agents and employees, and all other persons acting or claiming to act on
their behalf or in concert with them, from continuing to engage in any
anticompetitive conduct and from adopting in the future any practice, plan,
program, or device having a similar purpose or effect to the anticompetitive
actions set forth above;

l.  Award to Plaintiffs their costs, including reasonable attorneys' fees; and

m.  Order other legal and equitable relief as it may deem just and proper, including such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation in order to dissipate the anticompetitive effects of Defendants' violations, and to restore competition.

## Jury Trial Demanded

74. Plaintiffs demand trial by jury for all causes of action, claims, or issues in this action which are triable as a matter of right to a jury.

Dated: July 15, 2020

XAVIER BECERRA
Attorney General of California

/s/ Anik Banerjee
KATHLEEN E. FOOTE
Senior Assistant Attorney General
ANIK BANERJEE
CA State Bar No. 236960
WINSTON H. CHEN
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6058
 Anik.Banerjee@doj.ca.gov
*Attorneys for Plaintiffs*