## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into on this 4th day of February, 2020 (the "Effective Date") by and among Corning Incorporated and Corning International Kabushiki Kaisha (collectively, "Corning") and the Attorney General of the State of California ("California AG"), on behalf of the State of California, including its state agencies ("California"), and the Attorney General of the State of Florida ("Florida AG"), on behalf of the State of Florida, including its state agencies, counties, municipalities, and any other entity that is an arm of the State of Florida ("Florida"). The California AG and the Florida AG are hereafter referred to as the "State AGs" and California and Florida are hereinafter referred to as the "Settling States."

WHEREAS, the State AGs are investigating possible violations of the federal antitrust laws, including Section 1 of the Sherman Act, as well as violations of their respective state antitrust and unfair competition laws, including California Business and Professions Code Sections 16720 *et seq.*, California Business and Professions Code Sections 17200 *et seq.*, the Florida Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act, related to the possible suppression and elimination of competition by the fixing of prices for ceramic substrates (the "Released Parts");

WHEREAS, the State AGs believe that Corning and its predecessors manufactured the Released Parts that were installed in vehicles purchased by the Settling States;

WHEREAS, the State AGs believe they have valid claims for damages, penalties, and attorneys' fees against Corning and litigation is warranted, but nevertheless believe that resolving their claims against Corning according to the terms of this Agreement is in the best interest of the Settling States in advancing their investigation;

WHEREAS, Corning has entered into separate class action settlement agreements ("Class Action Settlement Agreements") with the following groups: (1) plaintiffs representing a class

1

whose members include automobile dealership purchasers of the Released Parts—("Automobile Dealership Plaintiffs") in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) (the "MDL Litigation"), Case No. 2:16-cv-03802 (the "Automobile Dealership Action"); and (2) plaintiffs representing a class whose members include end-user purchasers of the Released Parts ("End-Payor Plaintiffs") in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.), Case No. 2:16-cv-03803 (the "End-Payor Action") (collectively, the Automobile Dealership Action and the End-Payor Action are referred to as the "Actions");

WHEREAS, these settlement agreements will result in the dismissal and release of claims by the Automobile Dealership Plaintiffs and End-Payor Plaintiffs;

WHEREAS, Corning, without any concession or admission of wrongdoing and despite its belief that it is not liable for the claims that have been or could be asserted, and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and potential future litigation, and to obtain the dismissal and releases contemplated by this Agreement, and to put to rest with finality all claims that could have been asserted against Corning by the Settling States;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the California AG, on behalf of California, the Florida AG, on behalf of Florida, and Corning, that all Released Claims (as defined below) shall be finally, fully, and forever settled, compromised and released, with prejudice, and except as provided herein, without additional attorneys' fees or costs, on the following terms and conditions:

1.      Corning shall make a payment to the California AG in the amount of $583,333.33 (the "California Settlement Amount").  The California Settlement Amount shall be used as payment for damages allegedly arising from any purchases or leases by California of the Released Parts or vehicles containing the Released Parts, and for attorneys' fees and other costs.  The California AG shall provide Corning with written payment processing instructions for payment by electronic transfer.  Corning shall pay the California AG within the later of (1) thirty (30) calendar days after the Effective Date, or (2) thirty (30) calendar days of receiving written payment processing instructions from the California AG.  No part of the California Settlement Amount paid by Corning shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

2.      Corning shall make a payment to the Florida AG in the amount of $291,666.67 (the "Florida Settlement Amount").  The Florida Settlement Amount shall be used as payment for damages allegedly arising from any purchases or leases by Florida of the Released Parts or vehicles containing the Released Parts, and for attorneys' fees and other costs.  The Florida AG shall provide Corning with written payment processing instructions for payment by electronic transfer. Corning shall pay the Florida AG within the later of (1) thirty (30) calendar days after the Effective Date, or (2) thirty (30) calendar days of receiving written payment processing instructions from the Florida AG.  No part of the Florida Settlement Amount paid by Corning shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

3.      The Settling States agree that, other than the settlement amounts, as listed herein, they shall have no other recovery of costs, fees, attorneys' fees, damages, penalties, fines, forfeitures, punitive recoveries, or injunctive or other relief against Corning.

3

4.      In consideration of the payment of the settlement amounts, Corning and all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including but not limited to the predecessors, successors, and assignees of each of the above, and each and all of the present and former principals, partners, officers, directors, supervisors, employees, members, insurers, attorneys, and assigns of each of the foregoing, shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits or causes of action, that are or could be asserted, whether known or unknown in any actions by or on behalf of the Settling States, or by or on behalf of any of the entities included with the foregoing definitions of California and Florida, arising out of or relating to any act or omission of Corning or of persons or entities alleged to be co-conspirators of Corning concerning price-fixing, market allocation, bid-rigging, or any unfair or deceptive anti-competitive conduct in the manufacture, sale, or distribution of the Released Parts at any time prior to and through the Effective Date (the "Released Claims").

5.      With respect to the Released Claims, the State of California expressly waives and releases, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

6.      The California AG and Corning shall use their best efforts to effectuate this Agreement and its purpose, including filing a settlement complaint for the Released Parts and an

4

immediate, complete, and final dismissal with prejudice of such complaint as to Corning, but not as to any defendant other than Corning. Should the court require a delay between the filing of the complaint and the dismissal, all other proceedings in the litigation shall, by virtue of this Agreement, be stayed as to Corning. The California AG and Corning agree to take whatever further steps, if any, as may be necessary in this regard and agree to seek immediate dismissal of the settlement complaint. Corning agrees to waive service of process of the complaint filed by the California AG. The California AG and Corning agree that any such filing shall occur in the U.S. District Court for the Eastern District of Michigan or, in the event jurisdiction is declined in the Eastern District of Michigan, then venue shall lie in the Superior Court of the State of California, County of San Francisco for claims asserted by the California AG. The Florida AG shall not file any such complaint against Corning.

7.      The State AGs may hereafter discover facts other than or different from those which they know or believe to be true with respect to the Released Claims, but hereby, on behalf of the Settling States, expressly waive and fully, finally, and forever settle and release, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Corning and the State AGs have agreed to release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Released Claims do not include any claims arising out of product liability; failure to disclose; misrepresentation; breach of warranty; breach of contract claims in the ordinary course of business; or claims related to defeat devices or auxiliary emission control devices (AECDs), including without limitation claims related to the design, marketing, calibration, manufacturing, or sale of hardware or software related to defeat devices or AECDs; or unfair or deceptive conduct

5

not based on allegations of competitor communications, price-fixing, market allocation, bid-rigging, or anti-competitive conduct.

8.    The release provided herein shall not have an effect on any claims, under federal, California, or Florida laws, brought by litigants other than the Settling States against Corning, including, but not limited to, any claims or potential claims asserted in the Actions on behalf of plaintiffs or putative class members who do not fall within the foregoing definitions of California and Florida.

9.    For the purposes of this Agreement, "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronically stored information. A draft or a non-identical copy of a document is a separate document within the meaning of this term. The term "English Translations" means English translations of documents that were originally written in a language other than English that Corning has provided to government entities relating to their investigations into alleged competition violations with respect to the Released Parts.

10.   In return for the release and settlement amounts as provided herein, Corning agrees to provide cooperation to the Settling States, as set forth specifically below.    All cooperation may be coordinated so as to avoid all unnecessary duplication and expense whenever possible. Corning agrees to the sharing, disclosure, or discussion of information or Documents produced, or provided pursuant to this Agreement and Class Action Settlement Agreements, among the State AGs, End-Payor Plaintiffs, and Automobile Dealership Plaintiffs, as permitted with the End-Payor Plaintiffs or Automobile Dealership Plaintiffs, unless the Class Action Settlement Agreements fail to receive final approval. For the avoidance of doubt, nothing in this Agreement shall be construed to require

Corning to commit any act, including the transmittal or disclosure of any information, which would violate any national, federal, state, or local privacy law, or any law of a foreign jurisdiction.

11.     Upon request of a State AG, Corning shall, after conducting a reasonable search, if and to the extent such information is found in such search, to the best of its knowledge and within one-hundred and eighty (180) days of the request, identify the makes, models, and years of those vehicles sold in the United States from January 1, 1999 through the Effective Date that contain Released Parts sold by Corning.

12.     In the event that Corning produces Documents, including translations, or provides declarations or written responses to discovery requests to any party or nonparty in the Actions ("Relevant Production"), Corning shall produce all such Documents, declarations, or written discovery responses to the State AGs contemporaneously with making the Relevant Production, to the extent such Documents, declarations, or written discovery responses have not previously been produced by Corning to the State AGs, and provided that the State AGs agree to be bound by any additional terms and conditions (such as restrictions on use or disclosure) applicable to such Relevant Productions.  In addition, Corning shall provide the State AGs with all cooperation it provides to any other party in the MDL Litigation, provided that the State AGs agree to be bound by any additional terms and conditions (such as restrictions on use or disclosure) applicable to such Relevant Productions.  To the extent that such cooperation includes any attorney proffer, witness interviews, or depositions of witnesses in addition to those already provided for in Paragraph 18, the State AGs shall be permitted to attend and/or participate in such attorney proffer, witness interviews, or depositions of witnesses, and shall be entitled to ask questions for a period up to three (3) hours at any interview or deposition (provided that this shall not expand the time permitted for any deposition).  All such additional cooperation shall be coordinated, to the extent

7

reasonably practicable, between the State AGs, settlement class counsel for Automobile Dealer Plaintiffs and settlement class counsel for the End-Payor Plaintiffs, or such other party to whom such cooperation is provided pursuant to a settlement agreement. The State AGs' receipt of, or participation in, cooperation provided by Corning shall not in any way limit the State AGs' entitlement to receive cooperation as set forth elsewhere herein, including, but not limited to, attorney proffers, witness interviews, and depositions.

13.    This Agreement does not restrict the State AGs from attending and/or participating in any deposition in the MDL Litigation. The State AGs may attend, cross-notice, and/or participate in any depositions of Corning's witnesses in addition to the depositions set forth in Paragraph 18, and the State AGs together with settlement class counsel for the Automobile Dealer Plaintiffs and End-Payor Plaintiffs may ask questions for a combined total of three (3) hours at each such deposition, provided the State AGs' participation shall not expand the time permitted for the deposition as may be provided by the Court, and the State AGs will not ask the Court to enlarge the time of any deposition noticed of Corning's current or former employees. Participation by the State AGs in the depositions discussed in this Paragraph will not limit the number of depositions to be provided under Paragraph 18. The State AGs agree to use reasonable efforts to ensure that any depositions taken under Paragraph 12 are coordinated with any other deposition noticed in the MDL Litigation to avoid unnecessary duplication.

14.    The State AGs agree to request the additional cooperation set forth in Paragraphs 15-18 ("Additional Cooperation") only if such Additional Cooperation is reasonably necessary for the investigation or prosecution of any defendant in the Actions that has not settled with both of the State AGs as of the Effective Date for possible suppression and elimination of competition in the sale of the Released Parts. Nothing herein shall obligate Corning to provide Additional

Cooperation for any purpose other than a State AG's investigation or prosecution of such defendants.

15.     Identity of Individuals. Within ten (10) business days of a State AG's request, Corning counsel shall provide the State AG with the identity of all current and former employees, directors, and officers of Corning who: (1) were interviewed and/or prosecuted by any government entity in connection with alleged price-fixing, bid rigging, and market allocation of the Released Parts; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to the Released Parts; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to the Released Parts.

16.     Transactional Data. Within sixty (60) days of a State AG's request, Corning will use reasonable best efforts to complete the production of transactional data concerning Corning's sales of the Released Parts to Original Equipment Manufacturers, or other purchasers of the Released Parts, for vehicles sold in the United States, from January 1, 1999 through the Effective Date.  In addition, Corning will provide, in response to a written request from a State AG, a single production of electronic transactional data generated during the two years after the Effective Date of this Agreement concerning the Released Parts, as it exists in Corning's electronic databases at the time of the request, within one hundred and twenty (120) days of the receipt of such request. Corning shall preserve such transactional data until the later of (i) two (2) years after the Effective Date or (ii) final approval of settlement agreements with all defendants in the Actions.  Corning will produce transactional data only from existing electronic transaction databases, except that, to the extent the Corning has not recorded or maintained electronic transactional data relating to the Released Parts for any period between January 1, 1988 and two (2) years after the Effective Date,

then Corning will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database no later than one hundred and eighty (180) days after the State AG's request.

17.    Documents. Upon request of a State AG, Corning will use reasonable best efforts to complete the production of the following Documents, including English translations, no later than one hundred and eighty (180) days after a State AG's request: (1) Documents, including any translations, provided to or seized by government entities relating to their investigation into alleged competition violations with respect to the Released Parts; (2) non-privileged Documents concerning the Released Parts collected and reviewed in connection with a communication, meeting, or agreement regarding the Released Parts, by any employee, officer, or director of Corning with any employee, officer, or director of another manufacturer or seller of the Released Parts, which were not provided to or seized by government entities; (3) Documents concerning Corning's determination of its prices for the Released Parts; (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for the Released Parts, including any Annual Price Reduction ("APR") Documents; and (5) Documents or non-public information regarding collusion with respect to any other automotive part that is the subject of the MDL Litigation. As to Documents in Corning's possession, custody, or control that are not listed above, Corning will consider in good faith any reasonable request by the State AGs to collect and produce such Documents, provided the request would not impose an undue burden on Corning.

18.    Attorney Proffers and Witness Interviews. Additionally, upon the request of a State AG, Corning shall use reasonable best efforts to cooperate with the State AG as set forth in Paragraphs 18.a and b below.

a. Corning's counsel will make themselves available at a mutually agreed-upon location in the United States for up to three (3) meetings of one (1) business day each within thirty (30) business days of a State AG's request to provide an attorneys' proffer of facts known to them.  Corning further agrees to make six (6) persons, reasonably within their control, available for interviews and depositions, provide six (6) declarations or affidavits from the same persons, and to make those persons available to testify at trial. The interviews and depositions shall be conducted at a mutually agreed-upon location in the United States, and the depositions shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. The availability of such persons shall not be construed in any way as a representation that such persons or information will support a State AG's claims against Corning with respect to the Released Parts.

b. In addition to its cooperation obligations set forth herein, Corning agrees to produce through affidavit(s), through declaration(s), and/or at trial, in the State AGs' discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by Corning. The State AGs agree to use reasonable efforts to obtain stipulations that would avoid the need to call the Corning witnesses at trial for the purpose of obtaining such evidentiary foundations.

19.     The California AG agrees that the use of any information or Documents provided pursuant to this agreement shall be subject to the terms of the Protective Order in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) (Dkt. No. 200) (the "Protective Order"), to which the California AG agrees to be bound. All Documents and other information provided pursuant to this Agreement will be deemed at least "Highly Confidential," as said designation is described in the Protective Order, and subject to the Protective Order as if they had been produced in response to discovery requests and so designated. The parties and their counsel further agree that any statements made by Corning's counsel in connection with and/or as part of this settlement, including the attorney proffer referred to in paragraph 14, shall be governed by Federal Rule of Evidence 408.

20.     If any Document protected by the attorney-client privilege, attorney work-product protection, or any other privilege is accidentally or inadvertently produced, its production shall in no way be construed to have waived any privilege or protection attached to such Document. Upon notice by Corning of such inadvertent production, the Document shall promptly be returned to Corning and shall not be used by the receiving State AGs for any purpose. This Agreement, together with the Protective Order in the Action, brings any inadvertent production by Corning within the protections of Federal Rule of Evidence 502(d), and the State AGs will not argue that production to any person or entity made at any time suggests otherwise.

21.     The California AG agrees that the Documents and information provided by Corning pursuant to this agreement shall be records of investigations conducted by the office of the Attorney General as that term is used in the California Public Records Act (Cal. Gov't Code §6254(f)), and the California AG shall not disclose the information in response to a request for inspection or copying under the California Public Records Act (Cal. Gov't Code § 6250 *et seq.*)

or other statutory or regulatory provisions akin to the federal Freedom of Information Act, except to the extent required by law. To the extent the California AG receives requests that it believes may require the provision of any such information, the California AG shall first advise Corning and afford it an opportunity to take action to maintain the confidentiality of information it has provided to the extent Corning deems necessary and appropriate and at Corning's expense.

22.     The Florida AG shall serve, and Corning agrees to accept service of process of, Civil Investigative Demands requesting documents, witness interviews, and testimony to be provided by Corning pursuant to this Agreement. The Florida AG shall keep any information or Documents produced pursuant to the Civil Investigative Demands confidential and such use shall be restricted to only those uses as authorized by §542.28 Florida Statutes.

23.     The release set forth in this Agreement shall not release Corning's obligations to provide cooperation pursuant to this Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Corning's respective obligations to provide cooperation under this Agreement shall cease whenever ordered by a court or on the date that final judgment has been entered in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.), Case No. 2:16-cv-03800, for any claims asserted against the parties named as defendants for price-fixing, market allocation, bid-rigging, or any other forms of anti-competitive conduct in the manufacture, sale, or distribution of the Released Parts.

24.     This Agreement shall not be deemed or construed to be an admission of liability or of any violation of any statute or law or of any wrongdoing by Corning. Nor shall this Agreement be deemed as an admission by Corning of any of the allegations or claims by the Settling States. This Agreement may not be used by the Settling States or anyone else in any pending or future

13

civil, criminal, or administrative action or proceeding against Corning, except in a proceeding or action to enforce this Agreement. ·

25.     This Agreement does not settle or compromise any claim by the Settling States against any defendant or alleged co-conspirator other than Corning. All rights against such other defendant or alleged co-conspirator are specifically reserved by the Settling States. Nothing in this Agreement shall affect the right of the Settling States to claim that joint and several liability of defendants other than Corning includes the volume of sales made by Corning.

26.     This Agreement may be executed in counterparts, each of which will be deemed an original, but which together will constitute one and the same instrument, and a facsimile signature or PDF signature shall be deemed an original signature for purposes of executing this Agreement.

27.     This Agreement contains the entire Agreement between the parties, and no other understandings or agreements, verbal or otherwise, exist between the parties, except as set forth herein.

28.     This Agreement may not be modified, changed, cancelled, rescinded, amended, or varied, nor may any or all of its terms be waived, except by a writing signed by all of the parties.

29.     Neither the Settling States nor Corning shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

30.     Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice, communication, or Document shall be provided by electronic mail or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

14

31.     The California AG and Corning agree that with respect to the settlement with California, this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California and the parties agree that venue for any and all matters or disputes arising out of this Agreement and asserted by or against the California AG shall lie solely in the U.S. District Court for the Eastern District of Michigan or, in the event jurisdiction is declined in the Eastern District of Michigan, then venue shall lie in the Superior Court of the State of California, County of San Francisco.

32.     The Florida AG and Corning agree that with respect to the settlement with Florida, this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Florida and the parties agree that venue for any and all matters or disputes arising out of this Agreement and asserted by or against the Florida AG shall lie solely in the U.S. District Court for the Eastern District of Michigan or, in the event jurisdiction is declined in the Eastern District of Michigan, then venue shall lie in the Second Circuit Court of the State of Florida.

33.     Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority and that by his or her signature this representative is binding the party on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.

Dated: __1/31/2020__

Xavier Becerra
Attorney General of California

By: _____
Kathleen E. Foote
Senior Assistant Attorney General
Anik Banerjee
Deputy Attorney General
300 South Spring Street, Ste. 1702
Los Angeles, CA 90013

*Counsel for the State of California*

Dated: __2/4/20__

Ashley Moody
Attorney General
State of Florida

By: _____
Patricia A. Conners
Chief Associate Deputy Attorney General
Timothy M. Fraser
Assistant Attorney General
Antitrust Division
PL-01, The Capitol
Tallahassee, FL 32399

*Counsel for the State of Florida*

Dated: __2/4/20__

By: _____
Lewis Steverson
Executive Vice President &
   General Counsel
CORNING INCORPORATED
One Riverfront Plaza
Corning, New York 14831

*Corporate Representative for Defendants*
*Corning Incorporated and Corning*
*International Kabushiki Kaisha*

16

Jeffrey L. Kessler
Jeffrey J. Amato
Angela A. Smedley
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
jamato@winston.com
asmedley@winston.com

*Counsel for Defendants Corning
Incorporated and Corning International
Kabushiki Kaisha*